## Case No. 16,503.

UNITED STATES v. THREE HUNDRED AND NINETY-SIX BARRELS DISTILLED SPIRITS.

[3 Int. Rev. Rec. 123.]

District Court, E. D. Missouri. March 19, 1866.

INFORMATIONS OF FORFEITURE—PLEADING—AMENDMENTS—VIOLATION OF INTERNAL REVENUE LAWS—FORFEITURE OF SPIRITS — EFFECT OF SEIZURE—EVIDENCE—ADMISSIONS AND OFFERS OF COMPROMISE.

[1. A motion to quash an information in rem on the exchequer side of the court does not lie. A demurrer is the proper mode of reaching technical or substantial defects.]

[2. Informations of forfeiture filed by United States attorneys are amendable even after pleas filed, and in substance. Such amendments may be allowed even by the judge at chambers, and counts may be stricken out, and new ones inserted.]

[3. Informations in rem on the exchequer side of the court are not criminal proceedings. They are civiliter, non criminaliter.]

[4. Amendments may be made in the appellate court only when the suits are on the admiralty side of the court.]

[5. There are no substantial distinctions between the proper structure of, and rules governing, libels of information and informations for municipal forfeitures.]

[6. Although, in informations of forfeiture, the technical precision of an indictment is not necessary, yet the allegations must be sufficiently specific to enable the claimant to traverse them, and the court to see that, if proved, a violation of the statute exists. The violation may be charged in the words of the statute, but a general averment that the statute has been violated is not sufficient.]

[7. The general structure of an information of forfeiture is governed by the 12th rule of the supreme court, and propounding by articles is admissible. Under the rules prescribed by the supreme court, general denials or "issues" are permissible in informations on the exchequer side of the court in cases of seizure under the internal revenue acts.]

[8. The forfeitures declared by the 68th section of the internal revenue act of June 30, 1864 (13 Stat. 248), extend only to the specific property belonging to the distiller, and, consequently, bona fide purchasers from him are protected.]

[9. In the absence of any express declaration in the statute that the forfeiture shall be instantaneous upon the commission of the forbidden acts, the forfeiture relates only to the time of seizure.]

[10. The proviso in the 68th section of the act which requires that the seizure be made within 30 days after the cause for the same shall have come to the knowledge of the collector and deputy collector, and that proceedings to enforce said forfeiture must be commenced within 20 days after seizure, are to be construed as meaning that the seizure may be made when only one cause of forfeiture has come to the collector's knowledge, and that, when made, it is for all causes of forfeiture which may have been committed, although they are not discovered until after the seizure. Hence there is no error in permitting causes of forfeiture to be inquired into at the trial which had not come to the collector at the time he seized the property. If the pleader has failed to set out, in the first instance, all of the causes which existed at the date of seizure, he should amend, and set them out; for, the suit being in rem, a condemnation and sale will give full title.]

[11. A broad distinction exists between admissions as independent facts, and confidential statements, made with a view to, or pending negotiations for, a compromise. There must be the seal of confidence, tacit or expressed, or an offer or proposition for compromise, before the statement can be excluded. A person who has violated the law, and knows the facts have been discovered, and that the officers are about to exercise the requisite authority for investigating the matter thoroughly, cannot defeat the ends of justice by volunteering all the information desired, and producing his books, papers, etc., and then stating that he desires to negotiate for the compromise.]

[This was an information of forfeiture against three hundred and ninety-six barrels of distilled spirits, claimed by Ferdinand Braun; Ferdinand A. Reuss having also intervened in the proceeding. Heard on motions for a new trial and in arrest of judgment.]

W. N. Grover, U. S. Dist. Atty., and George B. Kellogg, for the United States.

Gustavus Koerner, John M. Krum, Ernest W. Decker, Chester Harding, Jr., and Chester H. Krum, for claimant and intervener.

OPINION OF THE COURT. The original information in this case was filed on the 18th of April, 1865; an amended information, June 5th, 1865; and a second amended information, on leave granted, November 20th, 1865. The cause was tried at the present term of the court, and verdict rendered for the United States, on the 10th, 11th, 12th and 13th counts; and for the claimant on the 2d and 7th counts. Demurrers had been previously sustained to the other counts; except the 14th, which was formal, merely. The claimant has filed a motion for new trial; and the questions arising upon said motion have been argued in connection with such other questions as might be presented on a motion in arrest of judgment. The court has before it for decision, therefore, the many points presented by claimant's counsel; most of which have been previously decided, orally, but which it is now asked to review.

The information and amended informations are under the act of June 30, 1864 (the internal revenue act), and involve a construction thereof, and especially of the 68th section. Heretofore a motion to quash was overruled, on the ground that a motion to quash an information in rem on the exchequer side of the court does not lie. Thereup-

on demurrers were presented to each of the articulations (or counts) of the information; some of which were sustained and some overruled. Many of the points were merely technical, concerning practice and pleading; but as the rulings of the court were then announced orally, they are now re-stated in writing—omitting, however, the detailed reasons on which the rulings were based, and giving, in connection therewith, the views of the court on the new points made:

(1) A motion to quash does not lie. 1 Chit. Cr. Law, 855, 867, 868; 3 Bac. Abr. 647.

(2) A demurrer is the proper mode of reaching technical or substantial defects. 1 Chit. Cr. Law, 841, 846. Steph. N. P. 2263.

(3) Informations by United States district attorneys are amendable even after pleas filed, and in substance; and such amendments may be allowed even by the judge at chambers. Counts can be stricken out and new ones inserted. 1 Chit. Cr. Law, 841–846, 867.

(4) Informations in rem on the exchequer side are not criminal proceedings. They are civiliter, non criminaliter. Anonymous [Case No. 444]; U. S. v. Mann [Id. 15,718]; [The Samuel] 1 Wheat. [14 U. S.] 9; [The Hoppet] 7 Cranch [11 U. S.] 389; [The Emily and The Caroline] 9 Wheat. [22 U. S.] 386; [The Palmyra] 12 Wheat. [25 U. S.] 1.

(5) The broad distinctions between informations by the attorney general and by private persons are well settled, and uniformly recognized. 1 Chit. Cr. Law, 841–868; 3 Bac. Abr..647; Steph. N. P. 2263; 5 Mees. & W. 372.

(6) That, while it is held in Anonymous and U. S. v. Mann, supra, that amendments may be made at any time, it is evident that amendments can be made in the appellate court only when the suits are on the admiralty side of the court. [The Anne v. U. S. [7 Cranch [11 U. S.] 570; [The Edward] 1 Wheat. [14 U. S.] 261; [The Marianna Flora] 11 Wheat. [24 U. S.] 1; [The Friendschaft] 3 Wheat. [16 U. S.] 14; [Housemann v. The North Carolina] 15 Pet. [40 U. S.] 40.

(7) There are no substantial distinctions between the proper structure of, and rules governing, libels of information and informations for municipal forfeitures. [The Samuel] 1 Wheat. [14 U. S.] 9; [The Hoppet] 7 Cranch [11 U. S.] 389; [The Sarah] 8 Wheat. [21 U. S.] 391; Conk. Prac. 554 et seq. 872.

(8) Although the technical precision of an indictment is not necessary, yet the allegations must be sufficiently specific to enable the claimant to traverse them, and the court to see that, if true, a violation of the statute exists. The violation may be charged in the words of the statute, but a general averment that the statute has been violated is not sufficient. Anonymous [supra]; The Friendship [Case No. 5,124]; The Bolina [Id. 1,608]; U. S. v. Mann [Id. 15,718]; [The Samuel] 1 Wheat. [14 U. S.] 9; [The Hoppet] 7 Cranch [11 U. S.] 389, 496; [The Emily and

The Caroline] 9 Wheat. [22 U. S.] 381–386, 430; [The Sarah] 8 Wheat. [21 U. S.] 391; [The Mary Ann] Id. 380; [The Palmyra] 12 Wheat. [25 U. S.] 1.

(9) As to the general structure of the information, it is governed by the 12th rule of the supreme court, and propounding by articles is admissible. The act of congress (5 Stat. 518) clothed that court with authority to make rules for "suits at common law" in the United States district and circuit courts, as well as suits in admiralty and equity. A careful analysis of those rules shows that, while general denials or "issues" are not permissible in many cases, yet in cases on the exchequer side of seizures on land for violation of the internal revenue act, a general denial or "issue" is allowable. The extent to which amendments are permissible is illustrated in [The Sarah] 8 Wheat. [21 U. S.] 391, and [The Emily and The Caroline] 9 Wheat. [22 U. S.] 386; where libels of information for seizures (water-borne) on the admiralty side were required to be changed to informations for seizures on land, so that the trials could proceed on the exchequer, instead of the admiralty side of the court. Thus the supreme court, on appeal, directed amendments, whereby the nature of the jurisdiction was changed. It also decided that charges might be averred in the alternative, but that each alternative ought to contain, in itself, a complete and substantive charge. It may be well, however, to remark upon this point. that although it is not error to make such charges in the alternative, this court will, under its general powers in such cases, order a repleader, so that each charge may be distinctly pleaded in a separate article or count, and indistinctness and confusion thereby avoided at the trial. The claimant should have an opportunity of meeting separately and substantively each charge made, in a direct form; and juries have before them single issues. In the suit now under consideration, the 10th article alleges, in the alternative, several causes of forfeiture, so that when the jury found any one of them true, they had to find for the plaintiff on said article; while the record fails to show which is found true and which false.

(10) The 22d rule of the supreme court determines what the formal conclusion must be—"contrary to the form of the statute of the United States in such cases provided, as the case may require." The judiciary act of 1789 [1 Stat. 73] empowers United States courts to permit parties, at any time, "to amend any defect in process or pleadings, upon such conditions as the said courts" may prescribe. The practice in such cases, as evidenced by the authorities cited, and by the general principles governing informations, is sufficiently liberal to allow new counts or articles to be introduced by way of amendment, although they contain substantively new causes of action. A new res cannot be covered by way of amendment; for that

would introduce a new subject or party, and change the nature of the proceeding. But when a res is before the court for an alleged forfeiture, the court will permit, by way of amendment, any new cause of forfeiture, consistent with the original nature of the suit, to be introduced by amendment. That mode of procedure springs from the nature of the action. The court is required to determine whether the res in custodia legis is forfeited to the United States for the causes assigned; and, if not, whether the res shall be restored to the claimant, or still remain in custody. It cannot be discharged without an order of the court. Hence, as was shown by an elaborate analysis of authorities in this court a few terms ago (U. S. v. Two Hundred and Sixty-Nine and One-Half Bales of Cotton [Case No. 16,583]), when on the hearing it appears that the res is not forfeited for any of the causes alleged, but for some other cause not charged, the court will order the res to be detained, to await further proceedings. That doctrine was applied by Justice Story in a number of cases, even at the hearing of a libel on the prize side of the court. A libel in a prize case, jure belli, had to be dismissed on the hearing; yet, as it appeared in evidence that the res had become forfeited to the United States under an act of congress,—that there was a municipal forfeiture,—he refused to order a delivery to the claimant, for the obvious reason that the claimant was not entitled thereto. He could not condemn the res for a cause not alleged; and, as he was sitting in a prize case, he could not adjudicate a cause on the instance side of the court. Hence the res had to remain in custody, to await proceedings for the municipal forfeiture. As the prize libel was in the name of the United States, the latter could not intervene as claimant, on the ground of the previous municipal forfeiture, and thus be plaintiff and respondent at the same time. It was not so evident, however, that, as between the claimant, after the libel was dismissed, and the United States, the latter could not intervene pro interesse suo, on the ground of the municipal forfeiture, and ask for the delivery of the res to itself. The case would thus become one on the other side of the court, for all practical purposes; and yet a prize court would have to adjudicate upon the municipal forfeiture, so far as to settle the right of possession. It would, as between the United States and the claimant, have to decide, in any event, the right of possession or property, or await the decision of the proper tribunal; but could it enter a decree of condemnation for a municipal forfeiture? The detention of the property for further proceedings, therefore, remitted the parties to the appropriate forum to settle that dispute between them. If the United States district court had not had jurisdiction of both classes of cases, then the correctness of the ruling would have been obvious; but, as it had, the course pursued left the res in the same custody, to be proceeded against on the other side of the court, just as the supreme court decided in The Emily and The Caroline [9 Wheat. (22 U. S.) 386], that that cause should be reversed and remanded, so that the libel on the admiralty side might be converted into an information against the res on the exchequer side.

So, in the case now under review, omitting, for the present, all consideration of the effect of the proviso in the 68th section, a seizure is made, for illustration, by a competent officer for an alleged forfeiture, and an information duly filed. The cause of forfeiture, as alleged, is not proved at the trial; yet the evidence clearly establishes a forfeiture under another statute, or different section of the same statute. The claimant asks for an order of restitution. To entitle him thereto he must show a right of possession, and, generally, ownership. In this case, the claimant appears as owner. The action being in rem, any one interested in the res may intervene pro interesse suo, and the decree is conclusive against all the world. The formal mode of disputing the claimant's right to be heard, or his status, is by exception in the nature of a plea in abatement; but, if no question as to his status is thus made, and the information is dismissed at the hearing, the res still remains in custody. The court has to order it to be restored, or delivered to the person entitled to the possession. Often there are several claimants and interveners. Their respective rights have, in that way, to be adjudicated. The United States is here the plaintiff, and Braun the claimant. If the information were dismissed because none of the grounds of forfeiture alleged were established by proof. and if, on motion of Braun for an order of restitution, the United States should request leave to intervene, on the ground that the res had been forfeited to the United States for other than the causes alleged in the information, and if the court should thereupon proceed to pass upon the new causes of forfeiture, its judgment could only be for the delivery of the property to the United States as intervener, and not for the condemnation of the res. The United States, having thus acquired possession of the res, would be compelled to institute proceedings for its judicial condemnation. Practically, therefore, the same result would be effected as if the course suggested by Justice Story were pursued. If, on the other hand, the United States had several grounds for forfeiture, the causes of which fell on different sides of the court (as in the Cotton Case, alluded to), could it institute several distinct actions against the res, and have them pending at the same time? As a previous seizure is essential to the hearing, this difficulty would occur: The res seized or captured as a prize of war, for instance, must be retained in custody for the adjudication of a prize court; and a prize court is an international tribunal and not necessarily clothed with instance or municipal jurisdiction. The

res being still in the custody of the prize court and subject to its orders, could not also be in the custody and subject to the orders of instance or municipal court. Again, the instance court of admiralty has no jurisdiction of seizures on land; and if it has custody of the res in an admiralty cause, how can the exchequer court have, at the same time, custody and control of the res. Without such custody said courts, respectively, have no jurisdiction to hear and dispose of the cause. By the rules mentioned, however, the court having actual custody of the res would refuse to order the same to be delivered, to the claimant, but would, properly order it to be delivered on intervention, to the proper officer of the other court to be proceeded against according to law. But, as in this country, the United States district courts are prize, and instance, and exchequer courts, the final order would be for the detention of the res to await the decree of the court on the other causes appearing prima facie, whether a formal intervention had been entered or not. Here it must be remembered, that the intervener is not necessarily bound to file his intervention until the original cause of action has been determined; for if the libel or information is dismissed, the subject matter in dispute between him and the claimant he may not care to have even informally litigated in that way; and it may be, that if the res is condemned, the ground of condemnation may be broad enough to forfeit his interest in the res also.

Without pursuing further this branch of practice, it must suffice to say, that the better rule is, that only one action in rem by the United States against the same res should be pending at the same time. If, on the hearing of that cause, it should appear that the forfeiture had been incurred on other than the grounds alleged, or if other causes of forfeiture existed which called for further proof, then on the motion for restitution, the United States could object, and on petition or otherwise, ask for the detention of the res, to await further proceedings. In that way all technical difficulties as to the custody pending suit can be avoided. Still, the court, in acting upon the motion, would necessarily hold the district attorney to due diligence, and not permit him to withhold several of the causes which might be joined in the same information, and if defeated on those alleged, proceed seriatim for an indefinite period, under orders of detention, to experiment on the time of the court, to the accumulation of costs and expenses and the decay of the res itself. But the proviso in the 68th section of the internal revenue act may have an important bearing upon these questions of practice, requiring serious changes or modifications of the rules stated. To understand what its effect in that way may be, it is necessary to consider some of the provisions of that act, and the true force and meaning of the proviso. For those violations of the act contemplated by that section, a forfeiture is declared, and the collector or deputy collector is authorized to seize the property named. "Provided, that such seizure be made within thirty days after the cause for the same shall have come to the knowledge of the collector or deputy collector, and that proceedings to enforce such forfeiture shall have been commenced by such collector within twenty days after the seizure thereof." The preceding part of the section declares that the owner, etc., shall forfeit all the liquors, etc., which said liquors may be seized, etc. If the meaning of that section is, that the forfeiture operates, eo instante, upon the neglect or refusal of the owner, etc., to perform the duties enjoined, then the title passes to the United States, irrespective of the fact of seizure, and all subsequent purchasers from the original owner are unprotected. The proviso, then, would operate a mere limitation upon the powers of the collector and deputy collector—that is, would prevent them from seizing under any other conditions than those limited, but would not divest the title of the United States, nor prevent the seizure of the property by other persons or officers. Such an interpretation, however, would not be consistent with the general principles of the act, nor with the rules governing statutory forfeitures. [U. S. v. One Thousand Nine Hundred Sixty Bags of Coffee] 8 Cranch [12 U. S.] 398, 417; [Caldwell v. U. S.] 8 How. [49 U. S.] 366. It would be destructive of all commerce and fair dealing in the manufactured article, if for a neglect to make due entry, for instance, of the amount of grain placed in the mash tub on any day, a forfeiture were instantly worked of all the distillers' spirits, etc., wherever situated. The purchaser would be compelled, for his own protection, whenever he bought a barrel of distilled spirits, to ascertain, up to the day of purchase, whether the distiller had previously complied with the law in all required particulars. The language of the 68th section, literally taken, goes even further. It is, that the distiller "shall forfeit all the liquors and spirits made by or for him," without qualification as to time or as to the intervening rights of other parties. It would, literally construed, forfeit even the spirits previously manufactured and sold: so that no purchaser could know, at any time, when the spirits owned by him would become forfeited by the conduct of the manufacturer subsequent to the sale. So narrow an interpretation would evidently defeat the object of the law, which is a revenue act, and to be construed by rules governing such statutes. Hence, this court has held, that as "the owner," etc., "shall forfeit,"—and not the purchaser—the owner can forfeit only what belongs to himself. In other words, the forfeiture is only of the specific property belonging to the distiller; and consequently a bona fide purchaser is protected.

But when does the forfeiture attach to the distiller's property? By the rules laid down in the cases cited from the Supreme Court Reports, it does not attach until seizure. The doctrine involved has been so often discussed

in this court within the last five years, and is indeed so well settled by the supreme court, that it is unnecessary to state more than the established rule, viz.: That in the absence of any express terms in the statute declaring an instantaneous forfeiture, the forfeiture relates to the time of seizure only. The section says, then, that the specific property of the distiller named therein—that is, owned by him—may be seized by the collector; and the proviso limits the time within which such seizure may be made by him to "thirty days after the cause for the same shall have come to his knowledge." It is obvious that the limitation was designed for a twofold purpose: (1) to incite due diligence on the part of the collector, and (2) to prevent the interruptions or embarrassments to commerce which would ensue, from protracted suspension of action after the causes of forfeiture had become known. If causes of forfeiture were made known to the collector, and by him made public, any subsequent purchaser of the property aware of that fact, or of the pending investigation, could not claim to be a bona fide purchaser. He would be held to have bought in fraud of law. On the other hand, the collector would have it in his power to keep the property indefinitely in that embarrassed condition, if the limitation had not been imposed. It was necessary that he should have some time within which to investigate the charges, so that he might not make improvident seizures, and yet not hold all traffic in, or disposition of, the property indefinitely suspended.

At this time, the many nice questions which may arise as to the precise legal meaning of the phrase, "after the cause for the same shall have come to the knowledge of the collector." need not be considered. There is no dispute in this case that the seizure was within the prescribed time. Still the counsel for the claimant insists that the admission of certain testimony, and the instructions to the jury upon that provision of the statute, were erroneous. The court held that when only one cause of forfeiture came to the knowledge of the collector, he was justified in seizing; but that it is not necessary that all subsequent proceedings should be confined to that one cause alone. It is proper in all cases for collectors to proceed with due caution and upon substantial grounds. It is not imperative upon them to ascertain, before seizure, every cause of forfeiture which may exist. It is sufficient if they are satisfied that the property is subject to forfeiture for any one or more violations of the law. The phrase, "after the cause for the same shall have come to the knowledge." etc., is not to be interpreted as if it read, "after all causes," etc.; but merely as if it read, "after he shall have learned that the property is subject to forfeiture." The words "cause for the same"—that is, cause for seizure—require for interpretation an examination of the previous causes of forfeiture, for any one or more of which the liability to seizure arises. It is not confined to one cause, but is to be taken generically, as including all causes of seizure, taken collectively and distributively. But when, within the meaning of the act, can a cause of seizure be said to have come to the collector's knowledge? If it be when one cause is known, then the thirty days begin to run from that time; but if it be only when all the causes are known, then the limitation of thirty days may become in practice as many months. Hence, the court held at the trial that the time commenced to run from the day when the collector first had knowledge that any cause of forfeiture existed, for any other interpretation would operate an extension of the time limited; and it further held that a seizure, when so made, was a seizure for all existing causes, whether known to the collector at that moment or not. What may be considered the true meaning of the phrase, "after the cause shall have come to the knowledge of the collector"—that is, what amount of information is necessary to constitute knowledge of the cause, within the purview of the act—whether it means the first suspicion excited, or the first statement made, or the first authentic data obtained, or the first definite charge by any one, or a satisfactory conclusion reached after due and diligent investigation, it is not now necessary to decide, for no such point arises in this case. It is apprehended that there can be no serious difficulty in reaching a correct conclusion on that point when necessary; for the act furnishes the means of prompt investigation in most cases, and does not require the collector to act on suspicion or vague conjectures. He is justified by acts of congress for performance of his duty when reasonable cause exists; and if he acts without "reasonable cause," he proceeds at his peril. It is held, therefore, that there was no error at the trial, in permitting causes of forfeiture to be inquired into other than those which had come to the knowledge of the collector when he seized the property.

It may be doubtful whether the pleas in this case are so framed as to raise an issue upon the limitations of time named in said proviso; but the court considered it more consistent with duty to pass over nice technicalities in pleading, and have the jury pass upon all essential facts cognizable by them. The question was raised, whether the jury should not be confined to such causes of forfeiture as were within the knowledge of the collector when he made the seizure. Hence, the court ruled, and so instructed the jury, that if after cause of forfeiture came to the collector's knowledge, he did, within thirty days, seize, &c., then proceedings duly instituted within twenty days after such seizure, for that cause of forfeiture, and for others actually existing at the time of the seizure, presented for investigation all of said existing causes,

whether all of them were actually known to the collector when he seized or not. Any other construction, on that point might involve strange results. If a collector has thirty days within which to seize after each successive cause of forfeiture becomes known to him, and each day's neglect to make the required entries in a distiller's book, be a cause of forfeiture; and if he daily learns of only one of said causes, then there is no limit as to the time within which he could seize; for each new daily cause would carry with it the right to seize within thirty days after known. It might also happen that in each investigation he would discover a new cause of forfeiture before the seizure was made and within said thirty days; and consequently would have a right to postpone the seizure for the next twenty-nine or thirty days. Such a construction would leave property indefinitely exposed to seizure by a collector, and operate practically a repeal of the safeguards intended by the proviso.

If the rule contended for by claimant be correct, each discovery of a cause of forfeiture would require a new seizure, and consequently a new suit, notwithstanding the res was already in custody of the court and undergoing litigation. But enough has been said on this point under a former branch of the subject. The custody of the res for forfeiture incurred or alleged, must be retained until the case is disposed of, and subject to the order of the court made in that case.

The more serious inquiry is with respect to the second limitation of time in said proviso, viz: "Provided. that * * * proceedings to enforce said forfeiture shall have been commenced by such collector within twenty days after the seizure thereof." "And the proceedings to enforce said forfeiture of said property shall be in the nature of a proceeding in rem., in the circuit or district court of the United States, for the district where such seizure is made," &c. The act itself defines what is a commencement of proceedings by a collector to enforce a forfeiture, viz.: the institution of a suit in rem in the proper court. A suit for what? Certainly not for only one cause of forfeiture; for it is to enforce "the forfeiture." The seizure was for a forfeiture incurred. and it is immaterial so far as seizing is concerned, whether it is made for one or the other of the many causes named in the act. The "proceedings" are to secure a condemnation accordingly. The information should allege the causes on which the proceedings are based. in order that all may know what allegations are to be met. The rules for amendment then apply. If the pleader has failed to set out, in the first instance. all of the causes which existed at the date of the seizure, he should amend and set them out, for the suit is in rem., and a condemnation and sale will give full title. It is not necessary now to consider what would be the effect if the res had been bonded and sold (as in this case),

and the information dismissed at the hearing, there having been no allegations of the really existing causes—whether in such a case the res would not necessarily be discharged of all antecedent grounds of forfeiture, and the rights of the United States in said property lost. An intimation by Justice Story is to the effect that the bond represents the property in all respects, and may be proceeded against precisely as if it were the res itself. The view taken by the court is this: After seizure by the collector under the 68th section, the property is held for the forfeiture incurred, whether for one or more existing causes; and the commencement of a suit to enforce a forfeiture within twenty days is sufficient.

The cases cited to support the opposite views are not, in the opinion of this court, in the least at variance with the rules just stated. In The Harmony [Case No. 6,081] an application was made in the appellate court to amend the original libel so as to introduce a cause of forfeiture under another section of the act declared on—an entirely new cause of action. Justice Story said the objection thereto had never been considered as of itself sufficient, even at common law. "In revenue cases, such amendments were formerly denied, but latterly they seem to have been generally allowed, as the attorney general might obtain the same effect by a new information." The cases to which he referred were in personam, in which the rule is, for reasons already given, more stringent than in actions in rem. He refused to permit the proposed amendment in that case. on the ground that the cause of forfeiture proposed to be inserted occurred more than three years previously, and was therefore barred by the statute of limitations. Here, the district attorney might, on the theory of the defence, have commenced a new action within twenty days after new seizure made for another cause of forfeiture, discovered within thirty days of the new seizure, so that the party claimant was not injured by permitting the amendment. The refusal in that case was in the appellate court. The case [Houseman v. The North Carolina] 15 Pet. [40 U. S.] 40. is wholly inapplicable. It merely asserts what has been already stated, viz: that an amendment cannot bring in a new res, especially in the appellate court. Under section 68, although there may be many causes for a forfeiture, there can in the nature of things be only one forfeiture: for that exhausts the subject or res. The seizure is made because a forfeiture has been incurred. and proceedings are instituted to enforce that forfeiture. There was no new forfeiture incurred after the seizure and commencement of this suit, and none alleged in the amendments. New causes were assigned, but causes that existed at the date of the seizure. The court refused to permit any acts done after the seizure to be considered a cause of forfeiture, cognizable in this case. Again: The second limitation of the proviso is to prevent the collector from keep-

ing the res in his custody, unadjudicated, for an indefinite period of time. It a new cause of forfeiture arises after the first seizure, he can abandon that seizure, cause the information based thereon to be dismissed, and proceed de novo. But if after the first seizure and information filed, causes previously existing become known, he can amend by inserting new counts, according to the decision even in the Harmony Case; for if he could dismiss, seize anew, and file a new information, the case would fall exactly within the rules there laid down. Of course, if by law the right to seize and prosecute were gone, then the court would not permit such an amendment. Here the case is different, for even on the doctrine contended for by claimant, the right to seize anew for each new cause discovered exists at all times, if the seizure be made within thirty days of the discovery.

The analogies on the admiralty side of the court will fully illustrate the principle. After the res has been arrested under a warrant issued upon one libel, the process under the next libel is an order of detention. If a new warrant were issued on the second and each succeeding libel filed, while the property was still in custody, the marshal would be directed to seize and to take into his custody the very property already seized and in his custody to answer a pending libel. Each successive warrant would be a re-seizure, or "detention," merely. So in this case the discovery of a new cause would require from the collector, in whose hands the res remains until final adjudication, only the process of "detention" for such new cause. That detention or re-seizure would give twenty days within which to commence proceedings. But as the res is continually in his hands, the detention attaches continuously. A new or amended information is a declaration of such detention for the newly discovered cause. If he had turned the res over to the marshal, he could not seize it and take it from the marshal, but only declare that he seized it in the marshal's hands, to abide the result of the new information. But then it might occur that the first information would result in condemnation·and sale, and consequently the res be disposed of in that case, leaving nothing for the new suit to operate upon. It is better, therefore, and more consistent with the rights of all concerned, to introduce the new causes by amendment of the first information, which operates within the reason and purview of the proviso, as a new seizure or detention, and also as a commencement of proceedings to enforce the same. In any logical or legal view of the question, the same result is reached: the amendments are permissible and within the proviso. They bring all the causes existing at the date of the seizure, whether discovered after seizure or not, into one information, and thus expedite final adjudication, instead of compelling a resort to a series of

suits, involving new seizures, or to interventions at the close of each trial, to the indefinite delay of final proceedings, unnecessary accumulation of costs and expenses, and practical loss or destruction of the res itself or of its value.

It is contended that as the causes of forfeiture involve fraud, the proof should be stronger than in ordinary cases; but many of the causes alleged involve only neglect, and were it not so, satisfactory proof is all that can be required. It was clear that at least nineteen or twenty thousand gallons had not been returned as the law required, and the United States consequently defrauded out of thirty or forty thousand dollars during three or four of the months covered by the information.

It is objected that evidence of the returns made prior to the act of June 30, 1864, under which the suit was brought, was admitted; also evidence of the amount of sales made prior to that time. That evidence was clearly admissible under one of the charges made, viz.: That the spirits on hand on the 1st of July, 1864, on which taxes had not been previously paid, were sold and removed afterwards, and no payment of the increased duty made under section 55. It was also admissible to show whether any of the whiskey sold after that time had been manufactured, and had paid duty prior thereto. If the whiskey sold after that date had been included in the previous returns and had paid duty thereon, then no violation of the law with respect thereto had occurred on the ground of nonpayment of duties. It is true the evidence might cut two ways. If the previous sales exceeded the previous returns, it would appear inferentially that no spirits could have been on hand at that time, and consequently all sold afterwards were dutiable. If, on the other hand, it appeared that the amount manufactured exceeded the amount on which duties had been paid, then the excess was chargeable at the increased rate.

It is urged that the court erred in admitting admissions made by the claimant while endeavoring to procure a compromise, and although the rules on that subject laid down by the court in the charge to the jury were correct, still the original error was not thereby cured. If any error was committed under this head, it was in charging the jury on that point at all; for the court could not then, and cannot now, detect any such admissions which were permitted to go to the jury. The broad distinction exists between admissions as independent facts, and confidential statements made with a view to, or pending negotiations for, a compromise. There must be the seal of confidence, tacit or express, or an offer or proposition for compromise, or the statements are not to be excluded. A person who has violated a law or incurred a liability, and knows the facts have been discovered, and that the officers are armed with, and are about to exercise,

the requisite authority for investigating the matter thoroughly, cannot defeat the ends of justice by volunteering all the information desired, producing the books, papers, and documents which evidence the facts, and then stating that he desires to negotiate a compromise. A desire expressed is not a negotiation commenced, especially if the desire is mentioned to one who has no authority to compromise. But the rules of law are too well settled on this point to need argument or repetition. A frank confession is the best inducement to a consent to open negotiations for compromise—a confession not under the seal of confidence and not intended to be so regarded. If the negotiations fail, those confessions, made not under promise of secrecy and before it could be known whether any negotiations would be allowed, are not admissions or propositions within the rule concerning privileged communications. The act of 1862 [12 Stat. 576], concerning rules of evidence in United States courts, only extends the provisions of the act of 1789 to equity and admiralty suits. The act of 1864 (page 351) covers all persons in interest, even parties in civil suits; while the act of 1865 (13 Stat. 442) expressly declares informers competent witnesses.

The objection that the original information has no formal caption and does not show who is the plaintiff, would have no weight, even if not cured by the amendment; for it is substantially in the established form: "The information of William N. Grover, Attorney of the United States, etc., who sues on behalf of the United States," etc.

The causes of forfeiture in this case were for the violation of the 55th, 57th, 59th, and 68th sections of the act. Section 59 forbids the removal of spirits before inspection, and if such a removal is made, then a forfeiture is worked by force of the 68th section. It requires the inspector to mark the quantity and proof of the contents, the date of the inspection and the name of the inspector, upon each cask. The failure of the inspector to so mark the packages or casks is not any failure of duty on the part of the distiller. This and other cases recently tried in this court illustrate the importance of the rule. It seems that in some of the most important districts the proof is never marked on the cask by the inspector, but is averaged and a proper return thereof made in his duplicate returns. The language of the 6th section works a forfeiture for the distiller's "neglect to do, or cause to be done, any of the things by law required to be done as aforesaid,"—that is, to be done by him or his agent, or superintendent, and not by the collector, assessor, or inspector. Under the 57th section the distiller must keep the prescribed books and enter therein daily, or cause to be so entered, a true and exact account of the number of gallons dis-

tilled, sold, removed, &c., and the proof thereof, and verify the same by oath or affirmation. If he manufactures more than 150 barrels of spirits per year, he must make tri-monthly returns within five days after the first, eleventh, and twenty-first days of each month, to the assessor or assistant assessor—which returns are to be accounts taken from his books of the number of gallons, &c., not before accounted for and duly verified; and he must immediately forward duplicates thereof, also duly verified to the collector, and pay the duties called for by said accounts at the respective times when so rendered to the collector. Here is a regular series of checks. The inspector's returns to the assessor and collector show the number of proof gallons distilled; so do the distiller's books. The latter shows also the number removed, whether for consumption, sale, or otherwise, during each tri-monthly period. The sworn books and duplicate returns, if true, should correspond. If the distiller's books are false, and the returns are copies thereof, then the falsehood will run through both. In the language of the 68th section, the distiller will have neglected to make true and exact entry and report of the spirits distilled by him on which duty is payable. The 57th section also requires entries to be made of the quantity of grain, &c., put in the mash-tub daily, and the entries are to be in a book or books, in a form to be prescribed by the commissioner. If the commissioner has prescribed such a form, and there is a failure to comply with that provision, then a forfeiture occurs by force of the 68th section.

It is contended that no spirits are forfeited except those on which duties have not been paid; but the language of the act is. "all spirits made by or for him." It is also insisted that the only spirits forfeited are those still remaining in the distillery, or on the premises where distilled, or at most in the district where manufactured. It is not necessary to repeat the views expressed heretofore by the court on that point. The language of the act covers all spirits owned by the distiller, wherever they may be, which have been manufactured by or for him; and requires the suit to enforce the forfeiture to be brought in the district where the seizure is made, and not where the same were manufactured. If only the spirits still at the distillery are forfeited under the 68th section, then large frauds may escape the consequences contemplated by the act. It is true there are many pecuniary penalties imposed for some violations of the act, and the vats, boilers, etc., are forfeited; still the value of those vats, etc., and of the distillery, together with the amount of the pecuniary penalties, may, in some instances, fall far short of the duties which have been withheld. If a distiller can in three years sell and remove nearly two hundred thousand gallons, in fraud of the law, and thus

defraud the United States, at present rates of duty, of more than sixty thousand dollars per year; his distillery, vats, etc., and the sum total of the pecuniary mulcts, will not make good the lost revenue. But as the act imposes no lien on the spirits, but does on the distillery, etc., it is evident that the design was, not to embarrass commerce, but to subject only the distiller's property to forfeiture—to protect the bona fide purchaser of spirits.

This cause has been stoutly contested from its commencement; and among the rulings on so many points raised and ably urged at every step, it may be that error has been committed. On a careful review thereof none has been detected. The motions will, therefore, be overruled.

[For final proceedings, see Cases Nos. 16,502 and 16,504.]